Dr. Leslie Wyatt, President Arkansas State University P.O. Box 10 State University, Arkansas 72467-0010
Dear Dr. Wyatt:
This letter is a response to your request for an opinion regarding the State Vehicle Safety Program. As you have noted in your correspondence, Arkansas State University is required to comply with this program. You have indicated that the faculty of the University has raised various questions concerning compliance with the program. On behalf of Dr. D. Mike McDaniel, Chairman of the ASU Faculty Senate, you have presented several questions, which have been restated as follows:
 (1) When a faculty member signs the Forms RM-VS 100 and RM-VS 200, what rights is he/she relinquishing?
 (2) How does an individual's act of operating his or her own automobile, being covered by his or her own insurance, place the State of Arkansas and Arkansas State University at risk?
 (3) What protections are available to faculty members whose job responsibilities might include travel, in the event that those faculty members lose their driving privileges as a result of either fault or physical impairment?
RESPONSE
Question 1 — When a faculty member signs the Forms RM-VS 100 and RM-VS200, what rights is he/she relinquishing?
By signing the Form RM-VS 100, the faculty member agrees to the terms and conditions of the State Vehicle Safety Program. Those terms and conditions consist of certain detriments borne by the signer in exchange for the privilege of driving state vehicles and of driving personal vehicles on state business. The detriments borne by the signer are:
 (1) Agreeing to the release of his/her driving records by signing a Form RM-VS 200;
 (2) Subjecting himself/herself to the possibility of the loss of the privilege of driving state vehicles or driving personal vehicles on state business, due to the accumulation of "points," as described in the program material;
 (3) Subjecting himself/herself to the possibility of the loss of his/her employment as a result of the loss of driving privileges.
(4) Maintaining insurance coverage as required by law;
 (5) Maintaining proof of insurance coverage in vehicles for which he/she obtains coverage;
(6) Wearing a seat belt while driving.
Of the above-listed detriments to be borne by the signer, only one constitutes the relinquishment of a "right," i.e., something that the signer would possess but for his or her acquiescence to the Program. That detriment is the first: The agreement to authorize the Department of Finance and Administration to release the signer's driving records. The other detriments in the list reflect either: (1) The relinquishment (or possible relinquishment) of something that the signer does not possess in the absence of his or her acquiescence to the Program; or (2) The doing of something that the signer must do anyway. More specifically, the loss of the privilege of driving state vehicles is not the loss of a right that signer would have in the absence of the Program. Similarly, the maintenance of insurance coverage and the wearing of a seat belt is something that the signer would have to do even without the Program. Thus, the only "right" that is relinquished by the signing of these forms is the limited right to the privacy of one's driving records.[1] The other terms and conditions of the program, rather than taking away rights, have the effect of conferring upon the signer the right to drive state vehicles or to drive personal vehicles on state business. Again, the only entitlement that the signer gives up in exchange for this right is the right to have his or her driving records kept confidential.
It should be noted that the State Vehicle Safety Program was authorized by state law. See A.C.A. § 23-61-601 et seq. That being the case, its terms and conditions are implicitly incorporated into all contracts to which it is applicable. McArthur v. Smallwood, 225 Ark. 328, 281 S.W.2d 428
(1955). Therefore, the terms and conditions of the State Vehicle Safety Program are incorporated as implicit terms and conditions of the employment agreements of all state employees whose jobs require them to drive state vehicles or to drive personal vehicles on state business. These employees, of course, have the right not to sign the Forms RM-VS 100 and 200, but the exercise of that right would constitute non-compliance with the terms of their employment.
Your correspondence indicates some concern on the part of the faculty that the State Vehicle Safety Program constitutes an invasion of privacy. This office has previously been presented with the question of whether the State Vehicle Safety Program constitutes an unconstitutional invasion of privacy, and has opined that it does not. See Op. Att'y Gen. No. 86-624, a copy of which is attached. As stated therein, driving records do not rise to the level of personal rights for which protection is guaranteed by the U.S. Constitution. Id.
Neither do driving records, in my opinion, rise to the level of personal rights protected by the common law doctrine of invasion of privacy. Although the Arkansas Supreme Court has recognized the protectability of individuals' privacy interests, it has done so only in situations where the information at issue was of an extremely personal nature, and where the harm that could result for the individual as a result of the release of the information (and thus the importance of keeping the information private) outweighed the importance of releasing the information. See,e.g., McCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909
(1989).[2] Although the Arkansas Supreme Court has not had occasion to address the State Vehicle Safety Program in the context of a privacy challenge, it would appear from the previous privacy decisions that the driving records that are subject to release pursuant to the Program do not rise to the level of protectability that the Arkansas court has recognized. Indeed, a considerable argument could be made that the state has a substantial interest in the release of information pursuant to those sections.
Question 2 — How does an individual's act of operating his or her ownautomobile, being covered by his or her own insurance, place the State ofArkansas and Arkansas State University at risk?
If an employee of the state or of the university is driving his or her own vehicle and is covered by his or her own insurance, but is driving in the course of conducting state business or in the course of his or her employment, he or she can, as an employee and agent of the state or of the university, subject his or her employer to liability for his or her acts. National Bank of Commerce v. HCA Health Services of Midwest,304 Ark. 55, 800 S.W.2d 694 (1990). It is for this reason that the state and the university have an interest in assuring safe driving by state and university employees, even when those employees are driving their own vehicles.
If the employee is driving a personal vehicle and is not driving in the course of employment or on state or university business, it is more difficult to establish the employer's liability as a result of the individual's acts. This notwithstanding, the individual's driving record consists of a complete history of his or her driving; occurrences that happen when an individual is on his or her own time do reflect that person's propensities and driving habits. For this reason, the state and university have an interest in the record of those occurrences, just as it has in occurrences that happen on state or university time.
Question 3 — What protections are available to faculty members whose jobresponsibilities might include travel, in the event that those facultymembers lose their driving privileges as a result of either fault orphysical impairment?
This question appears to envision a wide variety of possible scenarios, involving a wide variety of facts. The outcome of each such scenario, including the protections afforded to the interested parties, would be largely dependent upon the particular facts of that case. I therefore cannot answer the question generally. However, I will note that certain fundamental protections are available to all parties, regardless of the facts of the individual cases. More specifically, the constitutional doctrines of procedural and substantive due process are both implicated by the State Vehicle Safety Program, and are available for the protection of individuals who are harmed by the operation of the Program. These doctrines require that the affected individual be given notice and a hearing before being deprived of any implicated interest pursuant to the Program, and that the deprivation imposed by the operation of the Program bear an appropriate relationship to the purpose of the Program.
In addition, certain protections are afforded to persons who have physical disabilities that come within the purview of the Americans With Disabilities Act [42 U.S.C. § 12101]. If, under the facts of the particular case, the "physical impairment" to which you have referred in your question implicates that law, an analysis of the applicable protections thereunder would be appropriate. However, such an analysis is impossible in the absence of the specific facts.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] This right is limited in the sense that driving records can be released under certain circumstances without the consent of the driver.See A.C.A. § 27-50-906.
[2] For a thorough discussion of the principles surrounding the issue of invasion of privacy, see Dunlap v. McCarty, 284 Ark. 5, 678 S.W.2d 361
(1984).